UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

JOHN WALTER LILLICO,

        Plaintiff,

    v.                                                                    21-CV-836-LJV
                                                                              DECISION & ORDER

ROSWELL PARK COMPREHENSIVE
CANCER CENTER,

        Defendant.

───────────────────────────────

On July 21, 2021, the plaintiff, John Walter Lillico, commenced this action,

alleging that the defendant, Roswell Park Comprehensive Cancer Center ("Roswell

Park"), discriminated against him because of his disability, age, and military status in

violation of the Americans with Disabilities Act of 1990 ("ADA"); the Age Discrimination

in Employment Act of 1967 ("ADEA"); and the Uniformed Services Employment and

Reemployment Rights Act of 1994 ("USERRA").  Docket Item 1.  He also alleges that

Roswell Park retaliated against him in violation of the ADA.  *Id.*  On September 16,

2021, Roswell Park moved to dismiss the complaint under Federal Rule of Civil

Procedure 12(b)(6), Docket Item 7; on October 21, 2021, Lillico responded, Docket Item

13; and on November 11, 2021, Roswell Park replied, Docket Item 14.

For the following reasons, Roswell Park's motion to dismiss will be granted

unless Lillico amends his complaint to address the deficiencies noted below.

## FACTUAL BACKGROUND[1]

On August 1, 2005, Roswell Park hired Lillico as a public safety officer.  Docket Item 1 at ¶¶ 13-14.  Lillico is over forty years old, "is a veteran of the United States Armed Services," and "has a disability."  *Id.* at ¶ 1.  After completing "some training," Lillico became a peace officer for Roswell Park.  *Id.* at ¶ 14.  His annual reviews ranged "from [g]ood to [o]utstanding"; he never received an "[u]nsatisfactory" evaluation.  *Id.* at ¶ 15.  He continued to work for Roswell Park until January 28, 2020.  *Id.* at ¶ 16.

But his employment also had its challenges.  For example, in January 2009, Lillico had "partial knee replacement surgery" that resulted in his being off work until May of that year.  *Id.* at ¶ 18.  While Lillico was on sick leave, the chief security officer, Carl Thomas, harassed him for not working and even called Lillico's surgeon "demanding to know when [Lillico] was returning to work."  *Id.*  Lillico complained about Thomas's behavior to his supervisors, but Thomas continued to badger him.  *Id.* at ¶ 19.

Roswell Park claimed that it terminated Lillico's employment in January 2020 because Lillico failed to "make a good faith effort to obtain a pistol permit."  *Id.* at ¶ 20. Roswell Park said that a Memorandum of Understanding ("MOU") required all public safety officers to be armed.  *Id.*  But the MOU was never signed.  *Id.* at ¶ 21.  What is more, Lillico was in the process of obtaining a pistol permit when his employment was terminated, and Roswell Park knew that.  *Id.* at ¶ 22.  In particular, Roswell Park knew

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

that before he could get a pistol permit, Lillico first had to resolve issues related to citations he had received in Arizona and California "some forty years" ago.  *Id.*

When other employees' positions were eliminated or they were released from their employment, Roswell Park did not always permanently end the employment relationship.  For example, after Logan Gallagher's position "was eliminated," Roswell Park offered the thirty-four-year-old veteran a dispatcher job.  *Id.* at ¶ 28.  Another employee, Erica Edenbauer, had been placed on disciplinary leave for ten months, but Roswell Park then re-hired her as a dispatcher.  *Id.* at ¶ 29.  Likewise, Roswell Park released John Pap, a forty-eight-year-old veteran with a disability, from his position as a public safety officer but then re-hired him as a "[d]river/[c]hauffer."  *Id.* at ¶ 30.

Lillico suspected that his alleged noncompliance with the MOU was merely a pretext for discrimination.  *Id.* at ¶¶ 20-21.  Therefore, on August 19, 2020, he filed a charge with the New York State Division of Human Rights ("NYSDHR"), alleging discrimination based on "age, military status, disability, and opposed discrimination/retaliation."  *Id.* at ¶ 6.  The charge also was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").  *Id.* at ¶ 7.  The EEOC issued a dismissal and notice of Lillico's right to sue on April 22, 2021.  *Id.* at ¶ 9.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  Although a court is required to accept "all factual allegations as true and draw[] all reasonable inferences in favor of the [pleading party]," *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (citation omitted).  Nor will "a formulaic recitation of the elements of a cause of action" suffice. *Id.*

## DISCUSSION

### I.   ADA CLAIMS

#### A.   Disability Discrimination

Lillico claims that Roswell Park discriminated against him because of a disability in violation of the ADA.  Docket Item 1 at ¶¶ 32-36.  Roswell Park argues that Lillico fails to allege any disability and that his ADA disability discrimination claim therefore fails. Docket Item 8 at 12-13.  This Court agrees with Roswell Park.

To state a *prima facie* case of discrimination under the ADA, a plaintiff must show that:  (1) his employer is subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he is otherwise qualified to perform the essential functions of his job with or without accommodation; and (4) he suffered an adverse employment action because of his disability. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment."  42 U.S.C.

4

§ 12102(1).  "[A] plaintiff [must] do more than simply allude to [his] impairments in [his] pleading; []he must plead *how* those impairments significantly impacted [his] major life activities, or []he will not survive a motion to dismiss."  *Collins v. Giving Back Fund*, 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (emphasis in original).

Lillico alleges that he "has a disability cognizable under the [ADA]."  Docket Item 1 at ¶ 1.  But he does not say what that disability is, much less how it "substantially limits one or more major life activities."  *See* 42 U.S.C. § 12102(1).  Nor does he allege that Roswell Park even knew about his disability.  Lillico therefore has not pleaded that he has a disability within the meaning of the ADA.  *See Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the [c]omplaint fails to plead that plaintiff was disabled."); *Harris v. N.Y. Dep't of Tax'n*, 2015 WL 1735082, at *7 (N.D.N.Y. Apr. 16, 2015) ("These conclusory allegations, in which [p]laintiff fails to identify exactly how he is disabled[,] fail to plausibly allege that he is a qualified individual with a disability.").

If Lillico thinks that he has alleged a disability within the meaning of the ADA based on his 2009 knee surgery, he is mistaken.  Although Lillico says that the knee surgery resulted in his being unable to work for five months in 2009, *see* Docket Item 1 at ¶ 18, he does not allege that he continued to suffer from that surgery—or the injury that necessitated it—when he was terminated eleven years later.  Moreover, even if Thomas's alleged harassment in 2009 suggested that Lillico's employer perceived him

as disabled in 2009,[2] Lillico does not allege anything to suggest that Roswell Park continued to perceive him as having a disability in 2020.

In his response to the motion to dismiss, Lillico argues that he "has shown that he was perceived as having a disability at the time of his NYSDHR complaint." Docket Item 13 at 7. But that allegation is missing from the complaint. And even if this Court were to consider that belated allegation, it still would not save Lillico's ADA claim because he still does not say—indeed, he does not even give a hint about—what the perceived disability is.

For all those reasons, Lillico has failed to plead that he has a disability within meaning of the ADA, and the complaint therefore fails to state a claim for disability discrimination based on his termination.

### B.    Failure to Accommodate

In addition to claiming that Roswell Park terminated him because of a disability, Lillico seems to claim that Roswell Park failed to accommodate his disability. *See* Docket Item 1 at ¶ 36 (noting that "[e]mployers are also required to provide reasonable accommodations to employees with [a] disability"). Roswell Park argues that the complaint fails to state a viable failure-to-accommodate claim because Lillico does not

---

[2] Any ADA claim based on the alleged harassment in 2009 is time barred. In New York, a plaintiff suing under the ADA must "file an administrative charge of discrimination with the EEOC [or the NYSDHR] no more than 300 days after the alleged discriminatory act to maintain an action in federal court." *Ellis v. Delphi Corp.*, 2009 WL 3671371, at *2 (W.D.N.Y. Oct. 29, 2009). This requirement is "strictly enforced" and applies "to each discrete act of alleged discrimination." *Id.* at *2-3. Lillico did not file an administrative charge until August 19, 2020, and any claim based on harassment in 2009 therefore is time barred by about a decade.

allege that he ever requested a reasonable accommodation.  Docket Item 8 at 15.

Again, this Court agrees with Roswell Park.

"An employer may [] violate the ADA by failing to provide a reasonable

accommodation."  *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013).  To

"state[] a *prima facie* failure[-]to[-]accommodate claim," a plaintiff must show that:

> (1) [he] is a person with a disability under the meaning of the ADA; (2) an
> employer covered by the statute had notice of his disability; (3) with
> reasonable accommodation, [he] could perform the essential functions of
> the job at issue; and (4) the employer has refused to make such
> accommodations.

*Id.* at 125-26 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d

Cir. 2009).  "[G]enerally, 'it is the responsibility of the individual with a disability to inform

the employer that an accommodation is needed,'" *Graves v. Finch Pruyn & Co.*, 457

F.3d 181, 184 (2d Cir. 2006), because "an employer cannot refuse to make an

accommodation that it was never asked to make," *Dooley v. JetBlue Airways Corp.*, 636

F. App'x 16, 18-19 (2d Cir. 2015) (summary order) (alterations, citations, and internal

quotation marks omitted).  Moreover, "the request must be 'sufficiently direct and

specific' to give the employer notice of the needed accommodation."  *Amerose v.*

*Monroe Cnty. Water Auth.*, 2012 WL 5398660, at *10 (W.D.N.Y. Nov. 2, 2012) (quoting

*Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009)); *see also Miletta v.*

*Waste Mgmt. of N.Y.*, 46 F. App'x 31, 32 (2d Cir. 2002) (summary order) (rejecting

plaintiff's argument that defendant "should have either transferred him to an unspecified

'office' position or created a new 'office' position for him" because plaintiff "never

requested that [defendant] take either of these steps").

As a threshold matter, Lillico's failure-to-accommodate claim fails for the same reason that his disability claim fails:  he has not adequately pleaded a disability within the meaning of the ADA.  But even if he had pleaded a disability, his failure-to-accommodate claim still would fail because Lillico does not allege that he ever sought an accommodation or a transfer.

Lillico seems to suggest that because other employees were transferred to new positions, he also should have been instead of having his employment terminated.  *See* Docket Item 13 at 7.  But unless he asked Roswell Park for some accommodation or transfer, Roswell Park had no reason to consider those options and it "cannot [have] refuse[d] to make an accommodation that it was never asked to make."[3]  *See Dooley*, 636 F. App'x at 18-19 (citations omitted).  Lillico's failure to plead that he sought a transfer or accommodation is another reason why his failure-to-accommodate claim fails.  *See Thomson v. Odyssey House*, 652 F. App'x 44, 46–47 (2d Cir. 2016) (summary order) ("Even assuming the validity of [plaintiff's] disability, [plaintiff] does not allege when, if ever, she notified [defendant] of her disability or sought any kind of accommodation" and "her reasonable accommodation claim" therefore "fails.").

### C.    Retaliation

To establish a *prima facie* case of retaliation under the ADA, "a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the

---

[3] The "general[]" rule that an employee must "inform the employer that an accommodation is needed," *see Graves*, 457 F.3d at 184, gives way when "the disability is obvious—which is to say, [] the employer knew or reasonably should have known that the employee was disabled," *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008).  Lillico does not suggest that his disability was so obvious that Roswell Park "knew or reasonably should have known that" he was disabled.

employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  *Sarno v. Doublas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).  "'Protected activity' includes oppos[ing] a discriminatory employment practice," *Hubbard v. Total Commc'ns., Inc.*, 347 F. App'x 679, 680-81 (2d Cir. 2009), and reaches even "informal protests of discriminatory employment practices, [such as] making complaints to management," *Belton v. Borg & Ide Imaging, P.C.*, 2021 WL 98392, at *7 (W.D.N.Y. Jan. 12, 2021) (citation omitted).

Here, the complaint alleges that in 2009 Lillico complained to his supervisors about Thomas's harassment while Lillico was recovering from his knee surgery.  Docket Item 1 at ¶¶ 18-19.  Assuming that such a complaint sufficiently alleges a protected activity, Lillico fails to allege any causal connection between that protected activity and his termination eleven years later.  Indeed, it is hard to fathom such a connection when more than a decade elapses between the activity and the alleged retaliation.  Although there is no bright-line rule for when temporal proximity suggests a causal connection, courts in the Second Circuit generally have held that "the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Morey v. Windsong Radiology Grp., P.C.*, 2019 WL 266461, at *8 (W.D.N.Y. Jan. 18, 2019), *aff'd*, 794 F. App'x 30 (2d Cir. 2019) (quoting *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007)).

Eleven years suggests just the opposite.  And Lillico has pleaded nothing else to support his claim that Roswell retaliated against him.[4]

Because Lillico has failed to plead or even imply a causal connection between any alleged protected activity and his termination, the complaint fails to state a viable retaliation claim under the ADA.[5]

## II.   ADEA CLAIM

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must allege facts plausibly suggesting that:  (1) "[he] was within the protected age group"; (2) "[he] was qualified for the position"; (3) "[he] experienced adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination."  *Green v. Town of East Haven*, 952 F.3d 394, 403 (2d Cir. 2020).  "An inference of discrimination can arise from circumstances including, but not limited to, [1] 'the employer's criticism of the plaintiff's performance in [age] degrading terms; [2] its invidious comments about others in the employee's protected group; [3] the more favorable treatment of employees not in the protected group; [4] the

---

[4] Lillico notes that "[a] request for [a] reasonable accommodation is an ADA[ ]protected activity," Docket Item 1 at ¶ 39 (emphasis omitted) (citing *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002)), and suggests that requesting an accommodation can support a retaliation claim.  That may be a correct statement of law, but it does not save his retaliation claim here.  As explained above, *see supra* at 6-8, Lillico does not allege that he requested any accommodation.

[5] In his response, Lillico asserts that "[a]n employer[']s failure to investigate a complaint of discrimination by an employee is in and of itself retaliation" and seems to argue that Roswell Park's alleged failure to investigate Thomas's behavior in 2009 gives rise to a retaliation claim.  Docket Item 13 at 7.  But any claim based on the failure to investigate in 2009 is time barred for the same reasons a claim based on the harassment itself is barred.  *See supra* note 2.

sequence of events leading to the plaintiff's discharge'[; or 5] . . . when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn v. City of New York*, 795 F.3d 297, 312-13 (2d Cir. 2015).

Lillico's age-discrimination claim is based on only two simple allegations:  (1) he "is over the age of forty," Docket Item 1 at ¶ 43, and (2) he "was terminated from his position," *id.* at ¶ 44.  But those allegations, without more, do not plausibly allege age discrimination.  *See Ortiz v. Standard & Poor's*, 2011 WL 4056901, at *3 (S.D.N.Y. Aug. 29, 2011) ("The fact that plaintiff was (a) fifty-nine years old and (b) terminated, cannot, without more, constitute a plausible age discrimination claim.").

The complaint also includes allegations about younger employees who were transferred to different positions when their positions were eliminated or when they were removed from their positions.  *See* Docket Item 1 at ¶¶ 48-50.  Lillico seems to include those allegations to suggest discrimination based on disparate treatment—that is, by showing that younger employees were treated more favorably than he was.

"When considering whether a plaintiff has raised an inference of discrimination by showing that [he] was subjected to disparate treatment, . . . the plaintiff must show [that he] was 'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [him]self."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted).  "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'"  *Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010) (quoting *Graham*, 230 F.3d at 40).

Lillico has not suggested discrimination based on disparate treatment because he does not allege that he was similarly situated to the comparators—for example, that he sought but was not given a transfer or that he applied for and was denied positions held by the comparators.  Nor does he allege that the comparators, like him, did not comply with the MOU but instead of being terminated were offered different positions. Similarly, Lillico does not allege that Roswell Park filled his former position of public safety officer with a younger employee.  Instead, he merely suggests that there were other positions at Roswell Park that he thinks he was qualified to fill and was not offered.  That is not enough to survive a motion to dismiss.

Because Lillico does not allege any facts that plausibly support an inference of discrimination based on age, the complaint fails to state a viable claim for age discrimination.

## III.    USERRA CLAIM

USERRA provides that "[a] member of the uniformed service 'shall not be denied . . . any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.'"  *Hunt v. Klein*, 2011 WL 651876, at *3 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 476 F. App'x 889 (2d Cir. 2012) (quoting 38 U.S.C. § 4311(a)).  "An employer shall be considered to have engaged in actions prohibited . . . if the person's membership[ or] service . . .  is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership[ or] service."  38 U.S.C. § 4311(c)(1).  "To survive a motion [to] dismiss, a plaintiff must allege sufficient facts to establish 'a prima facie case of discrimination by showing . . .

that his protected status was 'a substantial or motivating factor in the adverse [employment] action.'" *Hunt*, 2011 WL 651876, at *3 (quoting *Gummo v. Village of Depew*, 75 F.3d 98, 106 (2d Cir. 1996)).

Lillico has not alleged anything even remotely suggesting discrimination based on his military status.  Again, he simply says that he belongs to a protected group—veterans—and that he was terminated for allegedly failing to comply with the MOU.  Docket Item 1 at ¶¶ 56-59.  And again, that is not enough.

Lillico alleges nothing that might give rise to an inference that he was treated adversely because of his status as a veteran.  For example, he does not allege that non-veterans were exempt from the MOU[6] or that discriminatory comments were made about his veteran status.  As this Court has already explained, conclusory statements alone are insufficient to raise an inference of discrimination.  *See Hunt*, 2011 WL 651876, at *4 (finding that plaintiff failed to state a USERRA claim where the complaint "merely describes various disciplinary actions taken against him[] and notes that

---

[6] Lillico states that instead of terminating two other employees who had served in the military, Roswell Park offered them different positions.  *See* Docket Items 13 at 10; 1 at ¶¶ 60-61.  That Roswell Park might have accommodated other veterans does not give rise to an inference of discrimination here.  If anything, it suggests the opposite—that Roswell Park does not discriminate against veterans.  Lillico correctly notes that simply because an employer treats some members of a protected group favorably does not mean that it does not discriminate against other members of that protected group. *See Connecticut v. Teal*, 457 U.S. 440, 455 (1982) ("It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of [a protected characteristic] merely because he favorably treats other members of the employees' group.").  What Lillico seems to overlook, however, is that treating members of a protected group favorably also does not give rise to an inference of discrimination when another member of the group is not treated as favorably.  Instead, it is "the more favorable treatment of employees *not in the protected group*" that may give rise to an inference of discrimination.  *See Littlejohn*, 795 F.3d at 312-13 (emphasis added).

[p]laintiff is a military service member").  Because Lillico has not plausibly alleged that his military status had anything to do with his termination, the complaint fails to state a claim for discrimination under USERRA.

## IV.    CLAIM FOR PUNITIVE DAMAGES

It is not clear whether Lillico seeks punitive damages.  The complaint includes a parenthetical—"be sure to see if punitive damages are available for any given charge such as retaliation," Docket Item 1 at 10—but the Court has no idea what that means.

Roswell Park argues that to the extent Lillico seeks punitive damages, such a claim should be dismissed because Roswell Park is a state actor and therefore shielded from punitive damages.  *See* Docket Item 8 at 22-23.  Lillico does not respond to this argument.  *See* Docket Item 13.  The Court therefore assumes that Lillico did not intend to seek punitive damages and will not address Roswell Park's argument.  If Lillico intends to seek punitive damages, he should clearly demand them in any amended complaint.  And if Lillico amends his complaint to include a claim for punitive damages, Roswell Park may reassert its argument that Lillico may not recover punitive damages from Roswell Park.

## V.    LEAVE TO AMEND

Lillico has not asked for leave to amend his complaint.[7]  Nevertheless, because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), Lillico may file

---

[7] Roswell Park asks the Court to dismiss Lillico's claims with prejudice, *see* Docket Item 8 at 6, 23, but does not provide any support for dismissal with prejudice rather than with leave to amend.

14

an amended complaint, within 30 days, that corrects the deficiencies noted above.[8] Leave to amend any claims based on the alleged 2009 harassment and failure to investigate Lillico's complaints about the harassment is denied, however, because those claims are time barred. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (Leave to amend pleadings may be denied when any amendment would be "futile.").

## **CONCLUSION**

For the reasons stated above, Roswell Park's motion to dismiss, Docket Item 7, will be granted unless, within 30 days, Lillico amends his complaint to correct the deficiencies noted above. No later than 30 days after any amended complaint is filed, Roswell Park may answer, move against, or otherwise respond to the amended complaint. If Lillico does not file an amended complaint within 30 days, then his complaint will be dismissed, and the Clerk of the Court shall close this case without further order.

SO ORDERED.

---

[8] Roswell Park argues that Lillico's discrimination claims based on disability, age, and military status also should be dismiss because Lillico has not plausibly alleged that he was "qualified." *See* Docket Item 8 at 13-14, 19-21. Because the Court finds that the complaint fails to state a claim for other reasons, it does not address that argument. But in any amended complaint, Lillico should allege why and how he was qualified for a position at issue.

Dated:   June 10, 2022
         Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE