UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN WALTER LILLICO,

        Plaintiff,

    v.

ROSWELL PARK COMPREHENSIVE
CANCER CENTER,

        Defendant.

21-CV-836-LJV
DECISION & ORDER

---

On July 21, 2021, the plaintiff, John Walter Lillico, commenced this action against the defendant, Roswell Park Comprehensive Cancer Center ("Roswell Park"). Docket Item 1. Lillico alleges that Roswell Park discriminated against him in violation of the Americans with Disabilities Act of 1990 ("ADA"); the Age Discrimination in Employment Act of 1967 ("ADEA"); and the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). *Id.* He also alleges that Roswell Park retaliated against him in violation of the ADA. *Id.*

On September 16, 2021, Roswell Park moved to dismiss the complaint. Docket Item 7. After the parties briefed the motion, Docket Items 13 and 14, this Court found that the complaint was subject to dismissal because it failed to state a viable claim but granted Lillico leave to amend, Docket Item 15. So on July 11, 2022, Lillico filed an amended complaint. Docket Item 16.

On August 10, 2022, Roswell Park moved to dismiss the amended complaint. Docket Item 17. On October 3, 2022, Lillico responded. Docket Item 24. And on October 25, 2022, Roswell Park replied. Docket Item 25.

For the following reasons, Roswell Park's motion to dismiss is granted.

### **BACKGROUND**[1]

Lillico, who is 67 years old, is "a retired Marine Corps service member." Docket Item 16 at ¶ 18; *see id.* at ¶ 13. Roswell Park initially hired Lillico as a public safety officer on August 1, 2005; "[a]fter some training," Lillico then became a peace officer. *Id.* at ¶¶ 14-15. He worked for Roswell Park until January 28, 2020. *Id.* at ¶ 17.

During his employment, Lillico encountered issues stemming from two medical conditions. First, Lillico "was off work from January 2009 [to] May 2009" after "partial knee[-]replacement surgery." *Id.* at ¶ 19. Even though Lillico "provided all [the] medical reports needed during his absence," Roswell Park's chief security officer, Carl Thomas, "harassed [him] for being off duty" in January 2009. *Id.* Thomas even called Lillico's surgeon and "demand[ed] to know when [Lillico] was returning to work." *Id.* Lillico "found [Thomas's call to his surgeon] to be evidence of bias against him based on his disability" and considered it an "attempt to negatively affect [his] employment." *Id.*

Then, in 2011, Lillico "was made aware of blockages in his heart." *Id.* at ¶ 20. "He was prescribed medications" that allowed him to "cope and continue[] to work." *Id.* Roswell Park "was aware of [] Lillico's heart condition." *Id.* at ¶ 21. In "February/March 2020," Lillico "was out for five days due to a hear[t] issue," "had an angiogram," and

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). The following facts are taken from the amended complaint, Docket Item 16, and are viewed in the light most favorable to Lillico.

"was borderline for a stent." ² *Id.* (some capitalization omitted).  Lillico "had to go through Employee Health" to "return to work."  *Id.*

Throughout Lillico's time at Roswell Park, Thomas "continued to harass" Lillico. *Id.* at ¶¶ 22-23.³  This harassment "caused [] Lillico much stress and anxiety," including "anxiety [about] interacting with others."  *Id.*  Lillico "complain[ed] to his supervisors" and "filed grievances" about the harassment, at one point requesting as a reasonable accommodation that he "be left alone by [Thomas]."  *Id.*  But Roswell Park "did nothing in response to [Lillico's] grievances" and "nothing changed."  *Id.*

Roswell Park claimed that it terminated Lillico's employment in January 2020 because Lillico failed "to make a good faith effort to obtain a pistol permit."  *Id.* at ¶ 24. More specifically, Roswell Park said that a Memorandum of Understanding ("MOU") required all public safety officers to be armed and that Lillico's inability to carry a firearm was the reason for his termination.  *Id.* at ¶¶ 24-25.  But that MOU was never signed and was a "pretext for discrimination."  *Id.* at ¶ 25.

---

² Lillico alleges that he "was out for five days" in February or March 2020—which is one or two months after what he says was his "last day of work [on] January 28, 2020."  *See* Docket Item 16 at ¶¶ 17, 21.  The amended complaint includes other similar inconsistencies.  For example, Lillico alleges that on February 8, *2021*, "[s]hortly after the notice of his termination," he was hospitalized "when he suffered *Takayasu's arteritis*, an inflammatory disease of the heart."  *Id.* at ¶ 36 (italicization in original); *see also id.* at ¶¶ 23 ("During the period 2009 [sic] up to his termination in 2020 . . ."); 28 (Lillico "was terminated from his employment . . . on January 28, 2020").

These inconsistencies may be typographical errors, but this Court relies on the dates that Lillico alleges rather than attempting to divine when the events described in the amended complaint occurred.

³ This Court assumes that Lillico's sole reference to "Chief Thompson" is a typographical error and that he meant to refer to Thomas.  *See* Docket Item 16 at ¶ 23 ("The anxiety of interacting with others (Chief Thompson [sic]) was the basis for [] Lillico asking his [l]ieutenant to be left alone by the Chief.").

Moreover, at the time of his termination, Lillico "was in fact in the process of obtaining his permit."  *Id.* at ¶ 26.  He had even hired an attorney to help him resolve "issue[s]" involving old citations he had received in Arizona and California that apparently were interfering with his obtaining a permit.  *Id.* at ¶¶ 26-27.  Roswell Park knew about these issues and that Lillico was attempting to obtain his permit but terminated him anyway.  *Id.* at ¶¶ 26, 28.[4]

When other employees' positions were eliminated or they were released from their employment, Roswell Park did not always permanently end the employment relationship.  For example, Logan Gallagher, a 34-year-old veteran, was offered a dispatcher job when his other position was eliminated.  *Id.* at ¶ 33.  Another employee, Erica Edenbauer, "was re-hired as a dispatcher" after she "had several suspensions" and "was placed on disciplinary leave for 10 months."  *Id.* at ¶ 34.  And John Pap, a 48-year-old disabled veteran, "was released as a [p]ublic [s]afety [o]fficer and re-hired as a [d]river/[c]hauffeur."  *Id.* at ¶ 35.  In contrast, Lillico was not offered a job as a dispatcher or as a driver, *id.* at ¶¶ 33-35, and he was "embarrassed and depressed that his job was taken away from him and that he was not offered any other position," *id.* at ¶ 36.

What is more, Lillico was terminated despite his strong job performance.  He received favorable "annual employee performance evaluations ranging from [g]ood to [o]utstanding"; he never received an "unsatisfactory" review.  *Id.* at ¶ 16.  Additionally, Lillico's "coworkers liked and admired" him.  *Id.*  On June 11, 2020, one of Lillico's supervisors, M.J. Rearden, even sent a "letter of support" to Roswell Park "outlining his

---

[4] Lillico eventually received an "unrestricted pistol permit" on April 30, 2021. Docket Item 16 at ¶ 28.  He apparently blames Roswell Park for the delay because he says that he "believes [that Roswell Park] interfered with his application."  *Id.*

work with [] Lillico." *Id.* at ¶ 31.  In that letter, Rearden said that Lillico "was a knowledgeable officer who routinely fulfilled expectations," "carried out his duties with professionalism and integrity[, ]never hesitated to perform a task[,] and had disregarded his personal safety while trying to save the life of a person he did not even know." *Id.*

Others knew about Roswell Park's bias against Lillico.  For example, Tom DiLuzio, a lieutenant at Roswell Park, "knows that there was bias against [Lillico] as a veteran and as a former [u]nion [s]teward." *Id.* at ¶ 29.  And on the day that Lillico was terminated, Greg Meyers, a union official, heard Sue Johnson, Roswell Park's human resources director, say that "under no circumstances will [] Lillico ever be rehired in [p]ublic [s]afety." *Id.* at ¶ 30.

On August 19, 2020, Lillico filed a charge (the "administrative charge") with the New York State Division of Human Rights ("NYSDHR"), alleging discrimination based on "age, military status, disability, and opposed discrimination/retaliation." *Id.* at ¶ 7.  He cross-filed the administrative charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 8.  The EEOC issued a dismissal and notice of Lillico's right to sue on April 22, 2021. *Id.* at ¶ 10.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

### **I.    ADA CLAIMS**

Lillico alleges that Roswell Park violated the ADA by discriminating against him based on disability and by retaliating against him.[5]  Docket Item 16 at ¶¶ 37-45.  In its decision on Roswell Park's first motion to dismiss, this Court found that the allegations in the original complaint did not state a viable ADA claim but gave Lillico leave to amend the complaint to correct the deficiencies that the Court noted.  Docket Item 15 at 4-10.  Nevertheless, the amended complaint does not offer any new allegations about the disability Lillico originally alleged—presumably, a knee condition related to his 2009 surgery, *see* Docket Item 1 at ¶ 18; Docket Item 15 at 5 (noting that the amended complaint "does not say what [Lillico's] disability is")—or any other facts that might correct the pleading deficiencies in connection with that alleged disability, *see* Docket Item 16 at ¶¶ 13-36.

For example, this Court noted that the original complaint did not "plead[] that [Lillico] ha[d] a disability within the meaning of the ADA."  Docket Item 15 at 5.  More specifically, this Court noted that the complaint did not allege that Lillico "continued to suffer" from his 2009 knee surgery at the time of his termination or that his knee

---

[5] "Title V of the ADA[] prohibits retaliatory discrimination against an individual who has opposed any act or practice which the ADA makes unlawful." *Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 592 (S.D.N.Y. 2016) (citing 42 U.S.C. § 12203(a)). The amended complaint suggests that Lillico was retaliated against because he requested reasonable accommodations.  *See* Docket Item 16 at ¶¶ 42-46.

6

condition otherwise "substantially limits one or more major life activities." *Id.* (citing 42 U.S.C. § 12102(1)). But even with that roadmap provided by the Court, the amended complaint includes no new allegations or facts to cure that deficiency.[6] *See* Docket Item 16 at ¶¶ 19, 37-41. So for the same reasons that the complaint was deficient with respect to the disability that it attempted to allege, the amended complaint is as well.

But the amended complaint does allege two new potential disabilities: "blockages in [Lillico's] heart," *id.* at ¶ 20, and "depression and anxiety," *id.* at ¶¶ 22-23. Roswell Park argues that Lillico failed to exhaust his administrative remedies for the two new disability claims raised for the first time in the amended complaint, Docket Item 17-6 at 9-11, and that the amended complaint fails to state a claim under the ADA for any new disability, *id.* at 12-15. Because this Court agrees that Lillico failed to exhaust his administrative remedies for his new ADA allegations, it does not reach the question of whether those allegations raise a viable ADA claim.

"Before commencing an action in federal court alleging violations of the ADA, a plaintiff must first file a timely charge with the EEOC" or the equivalent state agency—here, the NYSDHR. *Basso v. Willow Run Foods, Inc.*, 577 F. Supp. 3d 73, 83 (N.D.N.Y. 2022); *see also Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). "Claims not raised in an EEOC charge may nonetheless be deemed exhausted if they are 'reasonably related' to claims that were in fact raised in the charge." *Basso*, 577 F. Supp. 3d at 83 (citing *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008)).

---

[6] The amended complaint likewise fails to address what this Court noted were deficiencies in Lillico's ADA retaliation claim. *See* Docket Item 15 at 9-10 (noting that the original complaint did not allege "any causal connection" between the harassment Lillico suffered after his knee surgery "and his termination eleven years later"); Docket Item 16.

7

> A claim is reasonably related to the EEOC charge where: (1) the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) the plaintiff is alleging retaliation by an employer against an employee for filing an EEOC charge; or (3) a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

*Id.* (citing *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993)). When evaluating the first prong, courts consider "whether the charge 'gave the agency adequate notice to investigate discrimination on the newly alleged basis.'" *Id.* (alterations omitted) (quoting *Mathirampuzha*, 548 F.3d at 76-77).

Roswell Park argues that Lillico failed to exhaust his administrative remedies for "his new disability-related allegations." Docket Item 17-6 at 9-11. More specifically, it notes that Lillico's administrative charge alleged discrimination related only to his "2009 knee injury/surgery" and did not allege discrimination relating to (1) his heart condition; (2) his depression and anxiety; or (3) his request for reasonable accommodation. *Id.* at 10. Lillico's response to the motion to dismiss did not substantively address Roswell Park's exhaustion argument. *See* Docket Item 24.

The administrative charge alleged that Lillico was discriminated against based on disability. Docket Item 17-3 at 4, 6-7; *see* Docket Item 16 at ¶¶ 7-8.[7] More specifically, it alleged that Lillico had knee surgery in 2009, that he missed several months of work because of the surgery, that Thomas called Lillico's surgeon "demanding to know when [Lillico] was returning to work," and that Thomas "continued to harass" Lillico despite Lillico's complaints to his supervisors. Docket Item 17-3 at 6-7.

---

[7] In deciding a motion to dismiss, the court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it, *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004), such as the administrative charge here.

But the administrative charge did not mention Lillico's heart condition, his depression and anxiety, or his request for a reasonable accommodation. *See id.* Moreover, while it alleged that Thomas's harassment of Lillico "continued" until some undefined time, it certainly did not allege that it continued through the end of Lillico's employment, *see id.*, as the amended complaint suggests, *see* Docket Item 16 at ¶ 23. Indeed, because the harassment alleged in the administrative charge was related only to Lillico's slow recovery from surgery and inability to return to work sooner, *see* Docket Item 17-3 at 6-7, it is not plausible that the harassment continued for more than a decade. Lillico therefore may bring ADA claims based on the new allegations in the amended complaint only if they are "reasonably related" to the allegations in the administrative charge. *See Basso*, 577 F. Supp. 3d at 83. And they are not.

First, the allegations relating to Lillico's heart and mental health issues are not logically or conceptually related to anything in the administrative charge. *See Chandler v. AMR Am. Eagle Airline*, 251 F. Supp. 2d 1173, 1178 (E.D.N.Y. 2003) ("[The] plaintiff's EEOC complaint cannot be reasonably interpreted to encompass [his] claim that [the] defendant failed to accommodate his prostate condition" because the "EEOC charge alleges only a failure to accommodate back and leg injuries."); *cf. Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 175 (E.D.N.Y. 2017) (holding that although the plaintiff "failed to check the 'disability' box" of her EEOC charge, her federal disability discrimination claims were reasonably related to the allegations in her EEOC charge because the "EEOC charge contain[ed] factual allegations that [we]re nearly identical to those in [the] federal complaint"). Nothing in the administrative charge suggested that Lillico had any medical conditions other than his knee injury, let alone that he was

discriminated against because of some other physical or mental impairment.  *See* Docket Item 17-3.  So nothing in the administrative charge gave the NYSDHR and the EEOC "adequate notice to investigate discrimination" based on Lillico's heart condition or depression and anxiety.  *See Basso*, 577 F. Supp. 3d at 83.  Similarly, the administrative charge said nothing about any request for reasonable accommodations, so the NYSDHR and the EEOC were not reasonably on notice to investigate discrimination or retaliation related to such a request.

The allegations about Thomas's alleged harassment present a closer call, but still do not pass muster.  In the administrative charge, Lillico alleged that after his knee surgery, "Thomas continued to harass [him], and [Lillico] complained to [his] supervisors, yet nothing changed."  Docket Item 17-3 at 6.  In the amended complaint, Lillico alleges that "[d]uring the period 2009 [sic] up to his termination in 2020[,] because of the anxiety and stress he suffered[, ]Lillico filed grievances regarding his treatment by his supervisors, including [] Thomas."  Docket Item 16 at ¶ 23.  And, he alleges, Roswell Park "did nothing in response to these grievances."  *Id.*

Both documents thus include allegations about Thomas's harassment, but they paint very different pictures of the scope and duration of that harassment.  The administrative charge alleged harassment only in the context of Lillico's knee surgery; it alleged that Thomas badgered Lillico to return to work and even called Lillico's doctor to find out when he would return.  Docket Item 17-3 at 6-7.  And it alleged that "Thomas continued to harass" Lillico and that Lillico complained, "yet nothing changed."  *Id.*  But nothing in the administrative charge suggested that the harassment continued for years after the surgery, let alone eleven years.  *Id.*  In other words, the administrative charge

10

did not give the NYSDHR and the EEOC adequate notice to investigate more than a decade of continued harassment, as the amended complaint suggests Lillico suffered.

What is more, the harassment described in the administrative charge involved Lillico's knee surgery and the time it took him to recover from it, not any heart or mental health issues. *Id.* And the administrative charge suggested that the harassment was related only to "being off duty relative to a partial knee replacement surgery." *Id.* at 6. For that reason, and because Lillico does not say how Thomas allegedly harassed him in later years, *see* Docket Item 16 at ¶¶ 22-23, the amended complaint does not allege "further incidents of discrimination carried out in precisely the same manner alleged in the [administrative] charge," another method of establishing that claims are reasonably related, *see Basso*, 577 F. Supp. 3d at 83.

Finally, Lillico has not alleged that he was retaliated against for filing the administrative charge, *see* Docket Item 16, the third way he might establish that allegations are reasonably related, *see Basso*, 577 F. Supp. 3d at 83.

In short, the NYSDHR and the EEOC were not on notice to investigate the new disability-related allegations raised in Lillico's amended complaint. Lillico therefore has not exhausted his administrative remedies on his new disability-related allegations for either his ADA disability discrimination claim or his ADA retaliation claim. *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (holding that ADA retaliation claims "in the employment context require the same procedures" as ADA employment disability discrimination claims, including exhaustion of administrative remedies). Those allegations thus do not provide a basis for Lillico's ADA claims.

And because this Court already has found that the allegations in Lillico's original complaint do not state a viable ADA claim, Docket Item 15 at 4-10, his ADA claims for discrimination and retaliation are dismissed.[8]

## II. ADEA CLAIM

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must allege facts plausibly suggesting that: (1) "[he] was within the protected age group"; (2) "[he] was qualified for the position"; (3) "[he] experienced adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of East Haven*, 952 F.3d 394, 403 (2d Cir. 2020). "An inference of discrimination can arise from circumstances including, but not limited to, [1] 'the employer's criticism of the plaintiff's performance in [age] degrading terms; [2] its invidious comments about others in the employee's protected group; [3] the more favorable treatment of employees not in the protected group; [4] the sequence of events leading to the plaintiff's discharge'[; or 5] . . . when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn v. City of New York*, 795 F.3d 297, 312-13 (2d Cir. 2015).

Lillico's amended complaint makes no new allegations in support of his age discrimination claim. *Compare* Docket Item 1, ¶¶ 41-53, *with* Docket Item 16, ¶¶ 46-58. Indeed, the only changes made to this section of the complaint appear to be minor

---

[8] To the extent that Lillico asserts an ADA failure-to-accommodate claim, that claim is dismissed for the same reasons. *See Kornmann v. N.Y.C. Bus. Integrity Comm'n*, 467 F. Supp. 3d 54, 60-61 (E.D.N.Y. 2020) (finding that plaintiff did not exhaust his failure-to-accommodate claims); Docket Item 15 at 6-8 (holding that Lillico's original allegations cannot sustain a failure-to-accommodate claim).

12

typographical corrections.  *See* Docket Item 17-2 at 10-12 (red-lined copy showing the differences between the original complaint and the amended complaint).  And Lillico's response to the second motion to dismiss makes no additional allegations or arguments in support of this claim.  *See* Docket Item 24 at 7, 11-12.

The Court's analysis of this claim therefore remains unchanged: "Lillico does not allege any facts that plausibly support an inference of discrimination based on age."  Docket Item 15 at 11-12.  He alleges that "younger employees [] were transferred to different positions when their positions were eliminated or when they were removed from their positions."  *Id.* at 11 (citing Docket Item 1 at ¶¶ 48-50); *see also* Docket Item 16 at ¶¶ 53-55.  But "he does not allege that he was similarly situated to the comparators," as is required to raise an inference of discrimination.  Docket Item 15 at 11-12 (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *see* Docket Item 16 at ¶¶ 52-58.  All told, he offers nothing more than his age and the fact that his employment was terminated in support of his age-discrimination claim.

Because the amended complaint adds no new allegations to support his age-discrimination claim, Lillico's ADEA claim is dismissed for the reasons stated in this Court's previous decision.  *See* Docket Item 15 at 11-12.

### III. USERRA CLAIM

The same is true with respect to Lillico's USERRA claim.

USERRA provides that "[a] member of the uniformed service 'shall not be denied . . . any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.'"  *Hunt v. Klein*, 2011 WL 651876, at *3 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 476

F. App'x 889 (2d Cir. 2012) (quoting 38 U.S.C. § 4311(a)).  "An employer shall be considered to have engaged in actions prohibited . . . if the person's membership[ or] service . . .  is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership[ or] service."  38 U.S.C. § 4311(c)(1).  "To survive a motion [to] dismiss, a plaintiff must allege sufficient facts to establish 'a *prima facie* case of discrimination by showing . . . that his protected status was 'a substantial or motivating factor in the adverse [employment] action.'"  *Hunt*, 2011 WL 651876, at *3 (italicization added) (quoting *Gummo v. Village of Depew*, 75 F.3d 98, 106 (2d Cir. 1996)).

The new allegations in the amended complaint add nothing to support Lillico's claim that he suffered discrimination because he was a veteran.  *Compare* Docket Item 1 at ¶¶ 54-61, *with* Docket Item 16 at ¶¶ 59-65; *see also* Docket Item 17-2 at 12-13 (red-lined copy showing the differences between the original complaint and the amended complaint).  And in his response to the second motion to dismiss, Lillico makes only one new allegation that even remotely affects his USERRA claim: that Edenbauer, one of his coworkers, "was not a veteran and had issues obtaining her pistol permit but was not discharged" as Lillico was.[9]  Docket Item 24 at 8.  But Lillico has not alleged that Edenbauer was a peace officer who was required to carry a firearm, *see* Docket Item 16 at ¶¶ 34, 54, 65; Docket Item 24 at 5, 7-8, 13; he says only that at some point Edenbauer "was re-hired as a dispatcher."  Docket Item 16 at ¶¶ 34,

---

[9] The allegations that Edenbauer was not a veteran and had issues obtaining a pistol permit are not in the amended complaint and are therefore not properly before the Court.  But even if they were, they would be insufficient for the reasons stated in this section.

14

54, 65.  Stated another way, Lillico has not alleged that Edenbauer was similarly situated to him.

So the allegation that Edenbauer was not terminated despite her failure to obtain a pistol permit does not create an inference that Lillico was treated differently because he was a veteran.  In fact, the amended complaint includes facts that suggest the very opposite: it alleges that Roswell Park gave new assignments to two of Lillico's other coworkers who *were* veterans—Gallagher and Pap.  *See* Docket Item 16 at ¶¶ 33, 35, 53, 55, 64; *see also* Docket Item 15 at 13 n.6 (noting that by making similar allegations, the original complaint "suggests" that Roswell Park "does not discriminate against veterans").  And as this Court noted previously, Lillico does not allege any other facts that create an "inference that he was treated adversely because of his status as a veteran.  *See* Docket Item 15 at 13.  "For example, he does not allege that non-veterans were exempt from the MOU or that discriminatory comments were made about his veteran status."  *Id.* (footnote omitted).

So Lillico still "has not plausibly alleged that his military status had anything to do with his termination."  *Id.* at 14.  He therefore has failed to state a claim under USERRA, and that claim is dismissed.

## CONCLUSION

For all the reasons stated above, Roswell Park's motion to dismiss, Docket Item 17, is GRANTED.  The Clerk of the Court shall close this case.

SO ORDERED.

Dated: February 6, 2023
       Buffalo, New York


                                                         ***/s/ Lawrence J. Vilardo***
                                                        LAWRENCE J. VILARDO
                                                        UNITED STATES DISTRICT JUDGE